## Gaster's Heirs vs. Gaines.

The certificate issued by the Board of Swamp Land Commissioners, under Ordi-
nance No. 9, that a party had made application to purchase certain swamp lands
and had presented accounts of levee work or scrip in payment thereof, was not a
sale of the land—the certificate merely evidencing an application to purchase,
which the commissioners might subsequently accept or reject.

*Appeal from Chicot Circuit Court in Chancery.*

Hon. John C. Murray, Circuit Judge.

Hutchinson and Watkins for appellants.

Harrison for appellee.

Mr. Justice Fairchild delivered the opinion of the court.

The following certificate was issued from the swamp land
office at Helena:

"Office of the Board of Swamp Land Commissioners,
"*Helena, Ark.*, January 10th, 1852.

"This certifies that Stephen Gaster, of Drew county, Ark.,
"has this day applied at this office to purchase the following
"lands, to-wit: W. ½ of S. E. ¼ sec. 33; the W. ½ of the N. W.
"¼, sec. 23; the N. ½ of sec. 22; the W. ½ of the S. W. ¼,
"sec. 22; frl. sec. 21 (east of Bayou Mason); the W. ½ of the
"N. E. ¼, sec. 28; the E. ½ of the S. W. ¼, sec. 28; the N. W.
"frl. ½ of sec. 28 (east of Bayou Mason); the E. ½ of the N. E.
"¼, sec. 35; the W. ½ of the N. E. ¼, sec. 14; the W. ½ S. E.
"¼, sec. 14; the N. E. ¼ of the S. E. ¼ of sec. 8; the N. W. ¼
"of the S. W. ¼ 9, and the S. W. ¼ of the N. W. ¼ of sec. 9,

" in T. 14 S., R. 2 W., containing 1,343 43-100 acres, in pay-
" ment of levee work done and received by the Board of Swamp
" Land Commissioners, or scrip.

                              " W. E. BUTTS, Secretary."

This certificate is the foundation of the title, and the only witten evidence of the title which the bill seeks to have established and quieted by a decree of the Circuit Court of Chicot county, sitting in chancery, and which is charged to be clouded and injured by the opposing but unfounded pretensions of Gaines, who is made defendant, and who is charged with asserting some sort of claim to the lands. The certificate and the statement of Hanly compose the testimony offered in the Circuit Court to substantiate the title of Gaster. Gaster never obtained any other documentary evidence of title, as the Board of Commissioners did not recognize the transaction with Gaster as a sale of the lands, as is shown by the erasure of the marks of entry that were made in the office when Hanly was obtaining the certificate: by the omission of the commissioners to include the lands in the list as sold by them that they reported to the auditor, under the thirty-first section of the swamp land land act of 12th January, 1853, and by the evidence of Kimball, swamp land secretary, who says that after a diligent search of the records and files of his office, he finds no evidence of the entry of any lands in township fourteen south, of range two west, by Stephen Gaster.

It is maintained, on the part of the plaintiffs, that the certificate itself shows a sale of the lands to Gaster by its acknowledgment of payment for them, although in its terms it recites but an application for purchase, and that when the lands were once sold to Gaster, no unauthorized act of the commissioners, interfering with the evidence of the sale, nor any omission on their part to make a report of the sale to the auditor can affect the right of Gaster.

It is then necessary to ascertain what is the effect of this certificate, either by itself, or in connection with other facts of the case. This certificate was not a certificate of purchase

under the 6th and 8th sections of the original swamp land act of 6th January, 1851. *Miles vs. Walworth, decided at the present term*. Nor was it so in the view of the commissioners; for they adopted the practice of issuing certificates of application for the convenience of persons who might wish to purchase particular lands, but these certificates were to be presented to the Board of Swamp Land Commissioners, accompanied with the scrip, or authenticated accounts of levee work, on which the applications were based, and if found to be correct, and the lands were confirmed, the original applicants could receive full certificates of purchase. *Hempstead's Swamp Land Laws, Ordinance 9, page* 48.

The General Assembly also had the same opinion, for it required any kind of certificate that had been issued by the commissioners to be examined by the land agent, and to be exchanged for a patent certificate, that is, a certificate of purchase, if the records of his office showed the lands to be confirmed, and that payment had been made for the lands as described by the certificate of the commissioners. *Swamp Land Act of 20th January,* 1855, *sec.* 1.

The certificate of application which was given to Gaster did not, then, confer a title to the lands described in it. It was simply evidence that the commissioners had received a proposition from Gaster to buy the lands; and by their ordinance No. 9, above referred to, which was adopted the day before Gaster's application was made, they deferred an acceptance of the proposition until the certificate for application should be presented to them, to obtain, instead of it, a full certificate of purchase, such as was provided for by the 6th and 8th sections of the act of 6th January, 1851, and that presentation would not be effectual till the lands should be confirmed.

As was intimated in *Miles vs. Walworth,* the certificate of application was a mere office regulation; it was not issued under any legislative requirement or authority, and there was no legislative recognition of such a certificate till the act of 20th January, 1855. But because the certificate of application

recited that Gaster had applied to enter the lands in payment
of scrip, it is earnestly urged that a full contract was made
between the commissioners and Gaster, by which the former
sold to the latter the particular lands described in the certificate,
and for the scrip that Gaster paid in as the price of the land.
Such is not the effect of the application.  The commissioners,
by law, were obliged to issue certificates of purchase upon the
performance of the requisite conditions, but they were not
obliged to give out certificates of application to any who might
wish to apply for lands before they could be sold, but having
granted this favor, they made it a condition of application that
it should be accompanied with scrip, or with an authenticated
account of levee work done and received.  This they had a
right to do.  They would not receive naked propositions to buy
lands, but they would receive them if accompanied with the
funds that might finally be taken in pay for the lands, yet the
application was none the less a mere proposition on the part
of the applicant, and to which the board was no further pledged
than to entertain it, and upon confirmation of the lands, to
accept the proposition in favor of the first applicant, provided
it should then appear right to be done.  Nor was an applicant
bound by his proposition, for by ordinance No. 11, adopted the
9th of April, 1852, the scrip that was filed with an application
was marked with the name of the applicant, so that if he
wished to change his location, or withdraw his scrip, or put it
into market, it could be readily identified and delivered to him
for a new issue.  This is conclusive that the application was
not to be taken as a contract against the applicant, he being
as free to withdraw his proposition to buy, as he had been to
make it.  He proposed to buy, but before his certificate of ap-
plication would be exchanged for one of full purchase, he might
wish to do otherwise, and the way was open to him to with-
draw his own funds on file in the swamp land office, use them
in applying for other lands, or take new scrip instead, and hold
it as a commodity in the market.

It is said that certificates of application like Gaster's were

the usual evidences of sale of the swamp lands by the original board, but of this there is no evidence, and we cannot see how such evidence could establish them to be instruments of sale, when the law does not so provide, when the ordinances of the board are directly the reverse, and when the terms of the certificates contradict such a conclusion. These applications have, doubtless, been generally changed into full certificates of purchase of the commissioners, to patent certificates of the land agents, or the scrip and accounts that were filed with them have been withdrawn, but that did not change the original character of the certificate of application. As the original Board of Commissioners had no official plats of the swamp lands, the lands were unconfirmed when they began to sell, and most of them remained so, during their term of office, such certificates of application were very likely to be the certificates commonly issued by the commissioners; but counsel are evidently mistaken in attributing to the commissioners the intention to issue certificates of purchase in the form of their certificate to Gaster, for the ordinances of the board are inconsistent with such an intention.

It then appears plain to us that the claim of Gaster, judged from his certificate alone, without consideration of the facts behind it, which induced the commissioners to refuse its recognition, is not sufficient to sustain his impeachment of the title of Gaines: for no matter what sort of a title that may be, by its assertion, or by undue clamor, he cannot thereby becloud the title of Gaster, as that which does not exist cannot be obscured.

It is true that when the lands applied for by Gaster had been confirmed, and his certificate of application with the scrip filed with it had been presented to the Board of Commissioners, with a request for a certificate of purchase, it would have been given, unless there had been a prior applicant, and if the area was properly estimated, and the scrip was sufficient to pay for it all; and the same result would have attended an application to the land agent for a patent certificate: Or, if such facts had

existed as would have compelled the board, or the agent, to have given a final certificate of purchase, a court of equity would have held Gaster to be in the same situation as if the ministerial officer had done what he ought to have done. *Hempstead vs. Underhill* 20 *Ark.* 358. But no presentation of the certificate of application accompanied by the scrip therewith filed, and by a demand for a certificate of purchase, or patent certificate, after the lands were confirmed, and under such facts as to show the demand to be within the proposed contract, has been alleged or proved by Gaster. The plaintiffs ask for the establishment of a title solely upon a construction of the certificate of application, for the statement of Hanly only tends to show the fact of payment, as is recited by the certificate.

It is mentioned in argument that the court that tried the case was of the opinion that Gaster had not shown a payment of the lands, and this is the presumed reason that the board did not record the application of Gaster in their official books, or include the lands in the list they reported to the auditor to have been sold. From the testimony of Hanly, a payment for the lands in the sense used by the parties, that is, filing with the application a sufficient amount of scrip to cover the price of the lands, would be strongly inferred. Part of the price would be paid out of allowances to Gaster, to Bailey and to another person, and the residue was made up in scrip. The commissioners seem to have been indebted to these persons for services performed for the board, and if the accounts were allowed, they were the same as scrip, as the parties could have drawn the scrip upon them; but Hanly is not positive whether these sums computed in ascertaining the price of the lands, were allowances, or only accounts, although he thought them to be the former. But Maloney, who was a clerk in the swamp land office at the time, states that they were allowances, but that the reports, upon which the allowances had been made, were considered to be defective, and that the commissioners directed

the secretary to withdraw the allowance till the defects were cured by amendment.

There was a difficulty about the scrip that was used in filing with the application, which Gaster, through Hanly, obtained from Trousdale, one of the commissioners, the particulars of which need not be stated. But it seems to be the just conclusion, from all the facts connected with the application of Gaster, that, from the condition of the allowances, or from an apprehension that the scrip loaned to Gaster would not be returned according to the stipulation of Hanly, the entries concerning the transaction were made in a private book belonging to one of the commissioners, and not upon the official records of the board, as Hanly thought. They were never put on the records, as is shown by the testimony of Kimball, while he shows affirmatively that there is an erased entry in a private book that was in the swamp land office, conforming to those Hanly saw made, and saw after it was erased. If Gaster had failed to replace the scrip borrowed of Trousdale, it would not have invalidated a recital in the certificate of payment having been made, though the scrip had been again appropriated by Trousdale, if the certificate had been an instrument issued under the law. But being issued merely upon a practice adopted by the commissioners, the same strictness would not perhaps be applied to it as to a final certificate, an instrument required to be issued by the commissioners upon full purchase of land.

It is sufficient, on this branch of the case, to say, that though we cannot well understand the legality of what Trousdale termed " raising scrip," that had been loaned to Gaster, and applied to his own use, and though the matter of the allowances seems to be presented very obscurely, such allowances being credited to Gaster in his settlement with the board, and for which he took scrip and certificates to the auditor, these were not shown to be applied to these lands; there is no light before us that would enable us to see clearly how to maintain Gaster's title, if depending on the question of payment, especially when the consequence of that would be to overturn

the decree of the court below made upon a question of fact, and to destroy the title of Gaines that seems to have been ac-quired by a regular purchase from the regular authority.

The allegations in the amended bill, by which Gaster might be trying to establish a preference to take the lands mentioned in his original bill as pay for levee work under the fourth section of the swamp land act of 11th January, 1851, are directly disproved by the testimony of the plaintiffs.

As has been seen, nothing in the swamp land records and files disclosed any sale of the lands to Gaster, any application for the lands by him, or that any one laid any claim to them. Being in this condition, after having been offered at public sale by the land agent, under the 8th section of the swamp land act of 12th January, 1853, Gaines, the defendant, at private entry, purchased one thousand and twenty-seven 85-100 acres of the lands on the 4th of April, 1854, received the certificates of the land agent, and, during the progress of the suit, which was begun on the 10th of September, 1857, obtained deeds from the Governor of the State. Even if the certificate of Gaster had been different in its effect from that given to it in this opinion, he would, on the most favorable footing, have had only an equitable right. Gaines by his purchase had the same; and his equity was every way equal to any that Gaster could have had, except in point of time, which, strengthened by his legal title, that the suit could not hinder him from pursuing, and could not affect when attained, would prevail over the supposed equity of Gaster.

In every aspect, in which we have been able to view this case, the decree of the Circuit Court sitting in chancery dismissing the bill, was correct.